**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MARY GARIS,

                Plaintiff,

    - against -

UNCUT-RAWTV, INC., DIPLOMATS, BMF
ENTERTAINMENT INC., DAMIEN
SULLIVAN *also known as* "DRX," ,

                Defendants.
----------------------------------------------------------X
UMG RECORDINGS, INC.,

                Cross-Plaintiff,

    - against -

UNCUT-RAWTV, INC., DAMIEN
SULLIVAN *also known as* "DRX," ,

                Cross-Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 06-5031 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    <u>P</u><small>RELIMINARY</small> <u>S</u><small>TATEMENT</small>

    Plaintiff Mary Garis ("Plaintiff" or "Garis") commenced this action against Defendants

Uncut-RawTV, Inc. ("Uncut"), Diplomats, BMF Entertainment Inc. ("BMF"), Damien Sullivan,

also known as DRX ("Sullivan"), and UMG Recordings, Inc. ("Cross-Plaintiff" or "UMG") for

knowingly using Garis' image for commercial or advertising purposes, without Garis' consent, in

violation of Section 51 of the Civil Rights Law of the State of New York ("§ 51"). Plaintiff

moved for default judgment against BMF and Sullivan after they failed to answer or otherwise

move in response to the Complaint. DE 12. Judge Spatt entered a default judgment against

BMF and Sullivan and referred this matter to me for an inquest to determine and recommend what damages, if any, are appropriate, including attorney's fees.  DE 15.

Additionally, Defendant UMG has filed a cross-claim against Uncut and Sullivan (collectively, "Cross-Defendants") for willful infringement of a federally registered trademark in violation of Section 43(a) of the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a), as well as for violations of New York law.  DE 2.  After Uncut and Sullivan failed to answer or otherwise move in response to the cross-claims, UMG moved for default judgment. DE 27.  Judge Spatt entered a default judgment against Uncut and Sullivan on the cross-claims and referred this matter to me for an inquest to determine and recommend what damages, if any, are appropriate, including attorney's fees.  DE 30.

## II.   BACKGROUND

In the Complaint, Garis states that in November 2005, she and Sullivan engaged in "a sexual and/or intimate encounter."  DE 1-1, ¶ 11.  On that occasion, Sullivan videotaped Garis without her permission while she was "nude/semi-nude."  *Id.* ¶ 12.  Sullivan, in conjunction with Uncut, Diplomats, and BMF, then copied, distributed, and sold the videotape causing Garis severe emotional distress.

Garis initially filed her Complaint on May 4, 2006 in New York State Supreme Court, Nassau County.  UMG removed the action to this Court and filed an Answer and Cross-Claim against Uncut and Sullivan alleging that the videotape of Garis improperly bore UMG's trademark.  Subsequently, Garis and UMG filed a Stipulation of Discontinuance dismissing Garis' claims against UMG.  DE 19.  The Stipulation was "so ordered" by Judge Spatt on December 10, 2007.  DE 20.  Garis currently has no pending claims against UMG, but she does

have claims pending against Uncut, Diplomats, BMF, and Sullivan (collectively "Defendants"). None of these remaining Defendants had answered or otherwise moved at the time the default was entered against BMF and Sullivan.[1]    The default against BMF and Sullivan as to Plaintiff's claims was entered on October 3, 2007.  The default against Uncut and Sullivan as to UMG's cross-claims was entered on October 29, 2008.

Subsequently, counsel for Uncut and Sullivan filed a notice of appearance on December 20, 2008.  DE 33.  Attached to the notice of appearance was a motion requesting an order (1) granting Uncut and Sullivan an extension of time to submit opposition to the amounts sought on the cross-claims, and (2) vacating the default of Sullivan and Uncut as to the cross-claims.  By Order dated December 24, 2008, this Court denied the motion of Cross-Defendants, without prejudice.  This Court stated that in order to vacate the entry of default, Cross-Defendants "must move by way of a formal motion under the Federal Rules of Civil Procedure to Judge Spatt.  Such motion must be filed no later than January 20, 2009 . . ."  DE 34 at 1-2. Cross-Defendants were further given leave to renew their request for an extension of time to submit opposition to the amounts sought on the cross-claims.  Since that time, Cross-Defendants have not filed any further motions or documents with the Court.

## III.    APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007)

---

[1]    The record indicates that Defendant Diplomats was never served with the Complaint. *See* DE 12 at 7.  However, there is no indication in Plaintiff's motion for default judgment or subsequent submissions indicating why she has not moved for entry of default against Uncut.

(citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)); *BMG Music v. Pena*, No. 05-CV-2310, 2007 WL 2089367, at *2 (E.D.N.Y. July 19, 2007).

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiff and Cross-Plaintiff have each provided adequate support for the relief they seeks. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159.

 In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

## IV.    PLAINTIFF GARIS' DAMAGES AGAINST BMF AND SULLIVAN

Plaintiff has alleged that Defendants "knowingly and intentionally used Plaintiff's name and/or photograph, image or likeness without her consent" in violation of New York Civil Rights Law §51. DE 1-1, ¶ 22. Plaintiff further claims that her image or likeness was used by Defendants for commercial or advertising purposes within the State of New York. *Id.* ¶ 15. New York Civil Rights Law §51 provides, in relevant part, that:

4

> Any person whose name, portrait, picture or voice is used within
> this state for advertising purposes or for the purposes of trade
> without the written consent first obtained as above provided may
> maintain an equitable action in the supreme court of this state
> against the person, firm or corporation so using his name, portrait,
> picture or voice, to prevent and restrain the use thereof; and may
> also sue and recover damages for injuries sustained by reason of
> such use and if the defendant shall have knowingly used such
> person's name, portrait, picture or voice in such manner as is
> forbidden or declared to be unlawful by section fifty of this article,
> the jury, in its discretion, may award exemplary damages.

In accordance with this provision, Plaintiff seeks an order enjoining Defendants from further unauthorized use of her portrait both within and without the State of New York. DE 1-1 ¶ 17. Plaintiff further seeks $1 million in damages as exemplary and compensatory damages, as well as attorney's fees and costs.[2] *See* DE 1-1 ¶¶ 17-24; DE 12 at 3.

## A. Injunctive Relief

"A court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" *Dunkin' Donuts Inc. v. Peter Romanofsky, Inc.,* No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting *King v. Nelco Indus., Inc.,* No. 96-CV-4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996)); *BMG Music*, 2007 WL 2089367, at *5. As noted above, § 51 provides that a person whose image is used without consent may maintain an equitable action "to prevent and restrain the use" of the image. N.Y. Civ. Rights Law § 51. Plaintiff adequately alleges in the Complaint that

---

[2]       While not explicitly stated in any of Plaintiff's pleadings or submissions, it appears to the Court that the Complaint also alleges a claim of intentional infliction of emotional distress. *See* DE 1-1 ¶ 22. However, because any damages awarded under that claim would be duplicative of emotional distress damages awarded under § 51, as discussed *infra*, the Court will not address this claim separately.

Defendants used her image without consent. *See* DE 1-1, ¶ 13-15. As a result of the default of BMF and Sullivan, these allegations are deemed true as against those Defendants. *See Joe Hand Promotions, Inc.*, 2007 WL 2891016, at *2. Because the allegations are deemed true, Plaintiff has met her burden to establish success on the merits of her claim as is required for injunctive relief. Furthermore, Plaintiff will be irreparably harmed if Defendants continue to distribute her image. As such, I find that Plaintiff is entitled to an injunction against BMF and Sullivan preventing and restraining the use of Plaintiff's image and likeness. *See ASA Music Prods. v. Thomsun Elecs.*, No. 96-cv-1872, 1999 U.S. Dist LEXIS 13221, at *5 (S.D.N.Y. Jan. 20, 1999) ("The default of the [defendants] and the well pleaded allegations of the complaint warrant the entry of an order permanently enjoining the [defendants] from selling any audio tape, CD, video tape or other phonorecord containing the name, voice, picture or portrait of [plaintiff] without his consent."), *adopted by* 1999 U.S. Dist. LEXIS 13157 (S.D.N.Y. March 31, 1999); *Diller v. Steurken*, 185 Misc. 2d 274, 277 (N.Y. Sup. Ct. 2000) (granting injunction under § 51 where defendants defaulted). For these reasons, I respectfully recommend to Judge Spatt that Plaintiff's request for an injunction be granted, thereby preventing BMF and Sullivan from the unauthorized use of Plaintiff's image or likeness.

   **B.   Compensatory Damages**

   Damages from claims based on New York Civil Rights Law § 51 "are designed primarily to compensate for injury to feelings." *Zoll v. Ruder Finn, Inc.*, No. 02-3652, 2004 WL 527056, at *2 (S.D.N.Y. March 16, 2004). Section 51 "serves to protect the sentiments, thoughts and feelings of an individual." *See Marano v. Aaboe*, No. 05-9375, 2010 WL 6350785, at *7 (S.D.N.Y. Oct. 20, 2010), *adopted by* 2011 WL 1157553 (S.D.N.Y. March 28, 2011). "A

plaintiff should receive damages for mental stress and for injury to her property interest inherent and intricably [sic] woven in her personality." *Id.* Ultimately, the determination of damages under § 51 is left to the sound discretion of the court. *See Id.; Capetta v. Lippman*, 913 F. Supp. 302, 305 (S.D.N.Y. 1996). In light of these principles, the Court finds that Plaintiff is entitled to damages under § 51 for emotional distress caused by Defendants' actions. *See Gallon v. Hustler Magazine, Inc.*, 732 F. Supp. 322, 326 (N.D.N.Y. 1990) (awarding damages for "persistent mental anguish" proximately caused by defendant's violation of § 51).

In support of her claim for damages due to emotional distress, Plaintiff has submitted her medical records from F.E.G.S. Health and Human Services System.[3] DE 25. These records were not accompanied or supplemented by an affidavit from Plaintiff detailing any emotional distress she endured or what the manifestations of that distress entailed. The F.E.G.S. records indicate that Plaintiff was treated for depression by a social worker with the F.E.G.S. Behavioral Health Services department between July 2006 and October 2006. *Id.* Plaintiff's case was closed by F.E.G.S. because Plaintiff repeatedly failed to attend her weekly therapy session. *Id.* The social worker's notes indicate that due to the unauthorized publication of her image, Plaintiff was suffering from "mild depression," "anxiety and confusion," and "frustration." *Id.* However, there are also indications in the social worker's contemporaneous notes of several other unrelated stressors with which the Plaintiff was dealing at that point in time. For example, among other

---

[3]     Plaintiff also submitted medical records for two visits to the Nassau University Medical Center Department of Emergency Medicine. DE 26. These visits took place in January 2005 and July 2005 and involved gynecological issues. The Court is at a loss to understand how these records are relevant to damages caused by the distribution of Plaintiff's image that occurred after November 2005. As such, these records will not be considered by the Court.

things, there are repeated references in the record to the death of Plaintiff's cousin in 2003 and the effect that incident had on Plaintiff's emotional state. *Id.*

Based on the medical records submitted by Plaintiff, the Court finds that Plaintiff did suffer emotional distress as a result of Defendants' violation of § 51. However, the Court deems the $1 million requested by Plaintiff to be excessive. *See Gallon*, 732 F. Supp. at 326 (awarding $30,000 in damages under § 51 for emotional harm caused by defendant's publication of nude photographs of plaintiff without her consent). The materials submitted by Plaintiff do not indicate that Plaintiff's depression was severe. Furthermore, there were other contributing factors to Plaintiff's mental state. Finally, because Plaintiff sought treatment at a free clinic, there are no out-of-pocket expenses to be recovered as a result of her emotional distress. In light of the fact that (1) the incident occurred in November 2005 and Plaintiff's treatment ended in October 2006; (2) *Gallon*, one of the few guideposts in this area, was decided in 1990; and (3) Plaintiff's own treating social worker characterized Plaintiff's depression as "mild" with "anxiety and confusion," I am respectfully recommending to Judge Spatt that damages in the amount of $50,000 be awarded to Plaintiff for her emotional distress.

### C.    Exemplary Damages

In addition to compensatory damages, a plaintiff may recover exemplary damages pursuant to § 51 "if the 'defendant knowingly used the person's . . . picture' without his consent." *Marano*, 2010 WL 635785, at *7 (quoting N.Y. Civil Rights Law § 51). "The award of exemplary damages is warranted when such an award is necessary to deter future conduct that violates Section 51." *ASA Music Prods. v. Thomsun Elecs.*, 96-1872, 1998 U.S. Dist. LEXIS 22362, at *33 (S.D.N.Y. Sept. 29, 1998). An award of exemplary damages does not require a

showing of malice or recklessness, but "it is enough to show that defendant knowingly used plaintiff's likeness." *Sherman v. Bell Atlantic*, No. 95-1817, 1996 WL 492985, at *4 (S.D.N.Y. Aug. 29, 1996) (internal quotations omitted). "Knowing use" refers to the defendant's knowledge of a subject's lack of consent, not to knowledge of use *per se*. *See id.* An award of exemplary damages is left to the court's discretion. *Marano*, 2010 WL 635785, at *7; *see also Sherman*, 1996 WL 492985, at *4.

In determining whether an injury merits exemplary damages, courts must consider "the circumstantial settings in which the violation occurred." *Marano*, 2010 WL 635785, at *7. Such factors include "good faith or its absence; mistake or knowing impertinence; misapprehension of evidence of approval." *Marano*, 2010 WL 635785, at *7 (quoting *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 513 (2d Cir. 1977). Plaintiff has alleged that Defendants knew she did not consent to the use of her image. DE 1-1 ¶ 14. There is nothing in the record to suggest that Defendants had any good faith basis for believing Plaintiff had consented. Furthermore, given the nature of the image used by Defendants and Defendants' failure to even attempt to defend their conduct, it is evident that an award of damages is warranted to deter future conduct. As such, I respectfully recommend to Judge Spatt that exemplary damages in the amount of $50,000 be awarded to Plaintiff.

## D.      Attorneys' Fees and Costs

Plaintiff did not seek attorneys' fees or costs in her Complaint. However, in her motion for a default judgment, Plaintiff requests that the Court award both attorneys' fees and costs. *See* DE 12 at 3. In response to this Court's Order seeking further information regarding the damages inquest, which specifically requested "required documentation in support of any costs and

attorneys' fees claimed, including contemporaneous time records" [DE 22], Plaintiff submitted

only the medical records discussed above.  No time records were received by the Court.  Plaintiff

did not submit any documentation showing the basis of an award of attorneys' fees or the amount

sought as reimbursements for attorneys' fees and costs.

In general, New York adheres to the American Rule that attorneys' fees are not

recoverable absent a contractual or statutory provision providing for the award of attorney's fees

to the prevailing party.  *See United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, F.3d

369, 34, 74 (2d Cir. 2004).  Section 51 of the New York Civil Rights Law does not provide for

the recovery of attorney's fees in civil litigation.  *See Marano,* 2010 WL 6350785, at *8 (denying

award of attorney's fees to Plaintiff in case brought under § 51).  As such, the Court recommends

that Plaintiff's request for attorney's fees be denied.  Furthermore, as Plaintiff has not submitted

any documentation of the costs incurred in filing this action, I must regrettably recommend to

Judge Spatt that Plaintiff's request for reimbursement of costs be denied.

## V.    CROSS-PLAINTIFF UMG'S DAMAGES AGAINST UNCUT AND SULLIVAN

Cross-Plaintiff UMG alleges that Uncut and Sullivan have violated Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a).  Under the Lanham Act, UMG is entitled to recover "(1)

defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

*ASA Music Prods. v. Thomsun Elecs.*, 96-1872, 1998 U.S. Dist. LEXIS 22362, at *38 (S.D.N.Y.

Sept. 29, 1998).  In its motion for a default judgment, UMG seeks an award of attorney's fees

and costs, injunctive relief, destruction of all material bearing its trademark and production of

Cross-Defendants' records concerning transactions bearing the "Def Jam" trademark.[4]  DE 27-1.

### A.    Equitable Relief

UMG asks the Court to issue a permanent injunction barring the Cross-Defendants or any

successors or assignees from manufacturing, distributing, advertising, offering for sale or selling

any non-Def Jam product bearing the Def Jam trademark.  DE 27-1.  As noted above, a court

may 'issue an injunction on a motion for default judgment provided that the moving party shows

that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the

prerequisites for the issuance of an injunction.'"  *Dunkin' Donuts Inc.,* 2006 WL 2433127, at *6;

*BMG Music*, 2007 WL 2089367, at *5.

The former consideration is met because the Lanham Act provides that a court "shall

have power to grant injunctions, according to the principles of equity and upon such terms as the

court may deem reasonable, to prevent . . . a violation under subsection (a), (c), or (d) of section

1125 of this title."  15 U.S.C. § 1116.  The latter consideration entails showing actual success on

the merits of the underlying claim as well as irreparable injury or harm.  *Gucci America, Inc. V.

Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003).  Actual success on the

merits is shown by virtue of the Cross-Defendants' default.  *Rolls-Royce PLC v. Rolls-Royce

USA, Inc.*, 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010).  "In a trademark case, irreparable injury is

established where there is likelihood that an appreciable number of ordinarily prudent purchasers

---

[4]      In the Answer and Cross-Claim, UMG additionally sought actual and consequential
damages, treble damages, statutory damages, and exemplary and punitive damages.  DE 2.
However, as these damages were not requested in the motion for a default judgment, they are not
addressed here.

are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Id.* (internal quotations omitted). I find that there is a strong likelihood that consumers would be misled or confused by the Cross-Defendant's use of the Def Jam trademark. In fact, Plaintiff and her lawyer themselves were misled when they initially filed suit against UMG.

Therefore, UMG has satisfied the requirements for a permanent injunction in its favor. Uncut and Sullivan should be permanently enjoined from using the Def Jam trademark in any manner in connection with the conduct of its business and the sale of its products. *See Id.* (permanently enjoining defendants use of plaintiff's trademark upon defendant's default); *Century 21 Real Estate LLC v. Bercosa Corp.,* 666 F. Supp. 2d 274 (E.D.N.Y. 2009) (same). I respectfully recommend to Judge Spatt that a permanent injunction be issued against the Cross-Defendants in substantially the form that UMG has sought in its moving papers. *See* DE 27-1, at 6-7.

UMG also requests that the Court enter an order requiring Cross-Defendants (1) to deliver all products bearing the Def Jam trademark to UMG for destruction and (2) to supply UMG with complete records concerning all transactions related to the use of the Def Jam mark. DE 27-1, at 7. The Lanham Act provides that where a violation of § 1125(a) has been established, the court may order that all materials bearing the improperly used mark "shall be delivered up and destroyed." 15 U.S.C. § 1118. The Cross-Defendants' violation of § 1125(a) has been shown by virtue of the Cross-Defendants' default. As such, UMG is entitled to an order directing that all products in the possession of Sullivan and Uncut bearing the Def Jam mark be delivered to UMG for destruction. *See Rolls-Royce PLC*, 688 F. Supp. 2d at 152 (ordering that defendant destroy all infringing material upon default). Furthermore, invoking the Lanham Act's equitable

principles, I find that UMG is entitled to receive a copy of Uncut and Sullivan's records concerning all transactions related to the use of the Def Jam name in order to give UMG the "opportunity it seeks to secure information of which it has been deprived as a result of [Cross-Defendants'] default." *Century 21 Real Estate LLC,* 666 F. Supp. 2d at 297. *See also George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992) ("Clearly, the [Lanham Act's] invocation of equitable principles as guideposts in the assessment of monetary relief vests the district court with some degree of discretion in shaping that relief."). For these reasons, I respectfully recommend to Judge Spatt that an Order be entered directing Uncut and Sullivan to deliver all infringing material in their possession to UMG for destruction, pursuant to § 1118, and that the records of Uncut and Sullivan's transactions related to the use of the Def Jam mark be produced to UMG.

## B.     Attorney's Fees

Section 1117 of the Lanham Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Typically, courts have found that 'exceptional cases' within the meaning of the statute are those where the cases involve fraud or bad faith or intentional, deliberate, or willful infringement." *Source Enterprises, Inc. v. Tanners Avenue Corp.*, No. 04-1788, 2004 WL 2471536, at *3 (S.D.N.Y. Nov. 3, 2004) (internal quotations omitted); *Gordon & Breach Science Publ. S.A. v. Amer. Inst. Of Physics,* 166 F.3d 438, 439 (2d Cir. 1999). UMG alleges in its cross-claim that Uncut and Sullivan willfully violated § 1125(a). DE 2, at 10. Given the willful infringement of Uncut and Sullivan and their failure to participate in this action, an award of attorney's fees is appropriate here.

To determine reasonable attorneys' fees, this Circuit has historically implemented the lodestar method by examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). However, in *Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit determined that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190. Further, the Second Circuit reasoned that "[w]hat the district courts in this circuit produce is in effect not a lodestar as originally conceived but rather a 'presumptively reasonable fee.'" *Id.* at 189.

The presumptively reasonable fee standard is predicated on the same basic analysis "by calculating the product of the hours reasonably expended and a reasonable hourly rate."[5] *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.,* No. 04-CV-2293, 2009 WL 5185808, at *4 (E.D.N.Y. Dec. 23, 2009); *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417 n.2 (2d Cir. 2010) ("While the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method.").

Regarding the reasonable hourly rate portion of the presumptively reasonable fee standard, the Second Circuit has suggested that the district court consider "what a reasonable,

---

[5]    The difference between the two methods is the lodestar method "would set the lodestar *and then* consider whether, in light of variables such as the difficulty of the case, it should adjust the lodestar before settling on the reasonable fee it was ultimately inclined to award." *Arbor Hill,* 522 F.3d at 187. However, the presumptively reasonable fee standard bears in mind *"all* of the case-specific variables . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190.

14

paying client would be willing to pay" when setting a reasonable hourly rate.[6]  *Arbor Hill,* 522

F.3d at 184.  However, the Court notes this Circuit's adherence to the forum rule which states

that district courts should generally use the prevailing hourly rates in the district where it sits.

*See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).  The Second Circuit

has since clarified that district courts "may use an out-of-district hourly rate – or some rate in

between the out-of-district rate sought and the rates charged by local attorneys – in calculating

the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid

those higher rates." *Arbor Hill*, 522 F.3d at 191.   The Second Circuit cautioned that "[w]e

presume, however, that a reasonable, paying client would in most cases hire counsel from within

his district, or at least counsel whose rates are consistent with those charged locally." *Id.*

Nevertheless, "[t]his presumption may be rebutted – albeit only in the unusual case – if the party

wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-

district attorney was reasonable under the circumstances." *Id.*

    To overcome the presumption in favor of the forum rule, "a litigant must persuasively

establish that a reasonable client would have selected out-of-district counsel because doing so

would likely (not just possibly) produce a substantially better net result." *Simmons v. New York*

---

[6]    The Second Circuit lists the relevant factors in determining what a reasonable, paying client
would be willing to pay as "the complexity and difficulty of the case, the available expertise and
capacity of the client's other counsel (if any), the resources required to prosecute the case
effectively (taking account of the resources being marshaled on the other side but not endorsing
scorched earth tactics), the timing demands of the case, whether an attorney might have an
interest (independent of that of his client) in achieving the ends of the litigation or might initiate
the representation himself, whether an attorney might have initially acted *pro bono* (such that a
client might be aware that the attorney expected low or non-existent remuneration), and other
returns (such as reputation, etc.) that an attorney might expect from the representation." *Arbor
Hill,* 522 F.3d at 184.

*City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009). In *Simmons*, the Second Circuit recently

advised that

> [i]n determining whether a litigant has established such a likelihood,
> the district court must consider experience-based, objective factors.
> Among the objective factors that may be pertinent is counsel's special
> expertise in litigating the particular type of case, if the case is of such
> nature as to benefit from special expertise. A litigant cannot
> overcome the presumption through mere proximity of the districts,
> nor can a litigant overcome the presumption by relying on the prestige
> or "brand name" of her selected counsel. . . . The party seeking the
> award must make a particularized showing, not only that the selection
> of out-of-district counsel was predicated on experience-based,
> objective factors, but also of the likelihood that use of in-district
> counsel would produce a substantially inferior result. . . . Among the
> ways an applicant may make such a showing is by establishing that
> local counsel possessing requisite experience were unwilling or
> unable to take the case, or by establishing, in a case requiring special
> expertise, that no in-district counsel possessed such expertise.

*Simmons,* 575 F.3d at 175-76 (internal citation omitted).

Regarding the hours expended portion of the presumptively reasonable fee standard, a

court must "examine the particular hours expended by counsel with a view to the value of the

work product of the specific expenditures to the client's case." *Entral Group Int'l,* 2007 WL

2891419, *9. "In the Second Circuit, motions for attorneys' fees must be based on

contemporaneous time records specifying relevant dates, time spent and work done." *R Bar of

Manhattan, Inc.,* 919 F. Supp. at 661 (citing *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1160 (2d.

Cir. 1994)). Moreover, any billed time which is unreasonable, excessive, redundant or

unnecessary should be excluded in the calculation. *See Quaratino v. Tiffany & Co.,* 166 F.3d

422, 425 (2d Cir. 1999); *BMG Music,* 2007 WL 2089367, at *7.

UMG seeks attorney fees in the amount of $34,404.69. *See* Declaration of Andrew H. Bart ("Bart Declaration"), attached to DE 32, at ¶ 16. In support of this request, UMG submitted a declaration of its attorney, Andrew H. Bart, of the New York City office of Jenner & Block LLP, outlining Mr. Bart's experience and background. DE 32. Mr. Bart's declaration attaches the monthly time records that account for all work done by Jenner & Block attorneys in this matter. DE 32, Exhibit H. The individuals involved in UMG's representation were: (1) Partner Andrew H. Bart with an hourly billing rate between $500 and $625; and (2) associate Carletta F. Higginson with an hourly billing rate between $300 and $445. *Id.*

### 1. The Hourly Rate of UMG's Counsel

In support of their request for $34,404.69 in attorney's fees, UMG submits a declaration from Andrew H. Bart. *See* DE 32-1. The Bart Declaration states that the attorneys working on this case are located in the Southern District of New York. DE 32-1, ¶15. However, UMG has not cited any legal support for the award of attorney fees at an out-of-district rate. In order to apply out-of-district rates, even those of the Southern District, UMG must overcome the presumption by experience-based, objective factors such as counsel's special expertise in litigating the particular type of case as well as a particularized showing that the use of in-district counsel would produce a substantially inferior result, such as by establishing that no in-district counsel possessed such expertise. *See Simmons*, 575 F.3d at 175-76.

The Bart Declaration states that Mr. Bart has special expertise in intellectual property matters. DE 32. Mr. Bart has been in practice for thirty years and has focused on intellectual property litigation for over a decade. *Id.* ¶ 14. However, UMG has not made the necessary particularized showing that the use of in-district counsel would produce an inferior result. In

fact, UMG provides no specific information which would establish that local counsel with the requisite experience were unwilling or unable to take the case, or, alternatively, that no in-district counsel possessed such expertise. Accordingly, this Court must apply Eastern District of New York rates to determine a reasonable hourly rate.

Having considered the factors outlined by the Second Circuit, *see Arbor Hill,* 522 F.3d at 184, and having reviewed the reasonable hourly rates recently awarded by other courts in this District in Lanham Act cases, I find that the rates charged by UMG's counsel should be reduced. Other courts in the Eastern District determining reasonable attorney rates in Lanham Act cases have generally awarded between $300 - $440 for partners, and $150 - $250 for associates. *See, e.g., Pita v. Tulcingo Car Service, Inc.*, No. 10-cv-0481, 2011 WL 1790833, at *9 (E.D.N.Y. Apr. 7, 2011) (awarding $300 for partners and $150 for associates in Lanham Act case); *Mamiya America Corp. v. Huayi Brothers, Inc.*, No. 09-cv-5501, 2011 WL 1322383, at *12 (E.D.N.Y. March 11, 2011), *adopted by* 2011 WL 1253748 (E.D.N.Y. March 31, 2011) (awarding $300 for partners and $200 for associates in Lanham Act case); *Unilever Supply Chain, inc. v. I & I Wholesale Food Inc.*, No. 10-CV-1077, 2011 WL 1113491, at *8 (E.D.N.Y. Feb. 17, 2011), *adopted by* 2011 WL 1099841 (E.D.N.Y. Mar. 24, 2011) (awarding $440 for partners and $160 to $200 for associates in Lanham Act default action); *Century 21 Real Estate LLC,* 666 F. Supp. 2d at 299 (awarding $320 for partners and $230 for associates in Lanham Act case); *see also Amerisource Corp. v. RxUSA Int'l Inc.,* No. 02-cv-2514, 2010 WL 2160017, at *11 (E.D.N.Y. May 26, 2010) (awarding between $350 and $400 for partners and $250 for associates in contract case); *Luca v. Cty. of Nassau,* 698 F. Supp. 2d 296, 303-306 (E.D.N.Y.2010)*; Lochren v. Cty. of Sufolk,* 2010 WL 1207418, at *3 (E.D.N.Y. Mar.23, 2010)*; Coated Fabrics Co. v. Mirle Corp.,*

2008 WL 163598, at *7-*8 (E.D.N.Y. Jan.16, 2008) (collecting cases)*; Ueno v. Napolitano,* 2007

WL 1395517, at *9 (E.D.N.Y. May 11, 2007*); Cho v. Koam Medical Servs. P. C.,* 524 F. Supp.

2d 202, 207 & n. 4 (E.D.N.Y.2007) (collecting cases).  Considering these prevailing rates and all

the circumstances of this case, I therefore recommend that Judge Spatt award UMG for its

attorney's fees at the following hourly rates: $390 for Andrew Bart and $240 for Carletta

Higginson.

### 2.    Hours Expended

 I next turn to the question of whether the hours expended by counsel were reasonable in

an action of this nature.  Based on my review of the monthly invoices, it appears that UMG seeks

reimbursement for a total of 95.8 hours of work, 25.7 hours worked by Mr. Bart and 70.1 hours

worked by Ms. Higginson.  *See* DE 32, Exhibit H.  After a review of the invoices submitted by

UMG's counsel, the Court does not identify any unreasonable, excessive or unnecessary time that

should be excluded.  Accordingly, I find that all 95.8 hours expended by UMG's counsel are

properly included in calculating the attorneys' fee award.

### 3.    Total Attorneys' Fees

Based on the above analysis, I recommend to Judge Spatt that UMG be awarded $26,847

in attorney's fees broken down as follows: (1) associate Higginson's rate of $240 multiplied by

70.1 hours expended ($16,824); and (2) partner Bart's rate of $390 multiplied by 25.7 hours

expended ($10,023).

### C.    Costs

The Lanham Act provides that at the court's discretion, the  prevailing party shall be

entitled to recover the costs of the action.  15 U.S.C. § 1117(a).  UMG seeks $1,554.09 in costs.

DE 32-1 ¶ 16.  The bulk of the costs incurred are in regard to filing and service of process fees.  *See Id.*, Ex. H.  I find that these costs are recoverable and reasonable.  *See Artemide Inc. v. Spero Electric Corp.*, 09-cv-1110, 2010 WL 5452075, at *4 (E.D.N.Y. Nov. 23, 2010) (awarding $1,504 in costs in a Lanham Act case).  Thus, I recommend to Judge Spatt that UMG be awarded $1,554.09 in costs.

## VI.  CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Spatt that damages be awarded to Plaintiff Garis against BMF and Sullivan in the amount of $100,000, broken down as follows: $50,000 for compensatory damages; and $50,000 for exemplary damages.  I further recommend to Judge Spatt that BMF and Sullivan be permanently enjoined from any unauthorized use of Plaintiff Garis' likeness.

As to UMG's request for damages against Uncut and Sullivan, I respectfully recommend to Judge Spatt that Uncut and Sullivan : (1) be permanently enjoined from the unauthorized use of the "Def Jam" mark as set forth above; (2) be ordered to deliver all products bearing the Def Jam mark to UMG for destruction within 21 days; and (3) produce all records relating to the unauthorized use of the Def Jam mark to UMG within 21 days.  I further recommend that UMG be awarded attorney fees and costs against Uncut and Sullivan in the amount of $28,401.09, representing $26,847 in attorneys' fees and $1554.09 as costs.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Arthur Spatt, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Counsel for Plaintiff Garis is directed to serve a copy of this Report and Recommendation on the Defendants forthwith and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
        July 5, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge